UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRIARCH PARTNERS, LLC,

          Plaintiff,

—*against*—

DENNIS PRATTE,

          Defendant.

18 Civ. 2513

### COMPLAINT

Plaintiff Patriarch Partners, LLC ("Patriarch") respectfully alleges as follows:

### INTRODUCTION

1. This suit seeks to hold defendant Dennis Pratte to his unambiguous obligation to reimburse Patriarch for substantial pilot training expenses that the company advanced for his benefit and that he agreed to repay if he left Patriarch within his first year. Pratte voluntarily resigned after less than six months on the job, yet, having gained the benefit of pilot training paid for by Patriarch, he refuses to reimburse Patriarch, as agreed.

### JURISDICTION AND VENUE

2. This action arises under federal law (specifically, 28 U.S.C. § 2201 and 49 U.S.C. § 42121), and therefore jurisdiction lies in federal court under 28 U.S.C. § 1331. Jurisdiction is also proper under 28 U.S.C. § 1332 because the plaintiff and defendant are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue is proper because the parties agreed to resolving their disputes in the courts in New York County. Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### The Parties

4. Plaintiff Patriarch is a private, family office investment firm that is incorporated in Delaware, and has its principal place of business in this District. Lynn Tilton founded Patriarch in 2000, and is the company's CEO. Patriarch's mission since its founding has been to invest, through affiliated investment funds, in distressed companies (referred to as "Portfolio Companies"), and turn them around. Ms. Tilton is actively involved in the management of the Portfolio Companies, often serving as CEO and as a board member or manager of the companies (in most cases, the sole board member or manager).

5. Defendant Dennis Pratte was employed by Patriarch as a pilot from June 19, 2017 until January 3, 2018.

### Patriarch's Flight Department

6. Tilton's job responsibilities require that she travel with great frequency, including by visiting Patriarch Portfolio Companies across the country.

7. She generally travels on a company-operated airplane (a Gulfstream G280) or a company-operated helicopter (an MD902), in both cases with pilots that are employed by Patriarch.

### The Parties' Contracts

8. On or about June 9, 2017, defendant Dennis Pratte signed three contracts in connection with his acceptance of a new position as a pilot at Patriarch.

9. First, he countersigned a letter offering him "the position of Captain, Flight Department at Patriarch Partners, LLC (the 'Company') at its principal office in New York, New York with a start date of June 19, 2017 . . . ." (the "Offer Letter").

10. The Offer Letter stated that Patriarch would advance certain training expenses if Pratte worked for Patriarch for at least one year:

> The Company will reimburse you for the reasonable costs of your G280 training and certification, subject to successful completion within an agreed period of time. . . .  If you voluntarily resign your employment or are terminated for 'cause' (as determined by the Board in its sole discretion) within one (1) year after your start date, you agree that you will promptly reimburse the Company for all amounts paid to you in connection with your relocation and for your G280 training and certification . . . .

11. Second, he signed a "Confidential Information & Invention Agreement" in which he agreed (among other things) to "not, directly or indirectly, use, make available, sell, disclose or otherwise communicate to any other person or entity any Confidential Information."  The agreement is governed by New York law and provides that, in the event of a dispute, exclusive jurisdiction lies in the courts in New York County.

12. Third, he signed a letter agreement requiring that he keep confidential certain "Personal Information" learned on the job.  The confidentiality letter agreement is likewise governed by New York law and states that the parties submit to the jurisdiction of the courts in New York County.

13. The three agreements were integrated with one another.  They were presented and signed together, and the Offer Letter explicitly stated that a "condition to [Pratte's] employment" was that he execute the other two (together, the "Confidentiality Agreements").

14. Pratte began work at Patriarch on June 19, 2017.

**Pratte Voluntarily Resigns Less Than Six Months Into the Job**

15. Consistent with the Offer Letter, Patriarch advanced funds for Pratte to receive training to fly the Gulfstream G280. The fees and expenses for the training totaled $64,435.69.

16. On January 2, 2018, less than six months into his new job, Pratte sent an email to Dan Brown in the Flight Department, with a copy to Randy Jones, a Managing Director of Patriarch, with the subject line, "Notice of planned resignation."

17. The email stated, in full:

> Dan,
>
> In an effort to give you as much time as possible to find a new pilot, I am giving notice that I will be leaving the company on my June 9th anniversary (or earlier if you find a suitable replacement and wish to terminate my employment agreement sooner). I want to provide you with this information now in case it changes your decision to train me in the MD-902 helicopter or provide recurrent training in the Gulfstream. I also want to give you plenty of time to find and train another pilot.
>
> I appreciate the opportunity to work at Patriarch Partners. I believe the company has great employees, fabulous aircraft, and the pay is above industry norms, however when it comes to operational safety of the passengers, aircraft, and crew, you and I have separate and distinct ideologies on how best to ensure we are operating at the highest levels of safety. I'm not going to say either ideology is wrong, or better than the other, but I cannot accept the current path the Flight Department is heading and I think it's best that I end my employment with the company as soon as you find another pilot and get him/her trained - or June 9th, whichever the company prefers.
>
> Until you find a new pilot and ask for my resignation, I'll continue to be the best pilot I can be and will continue to provide the best service I can for Ms. Tilton, but I will resign no later than June 9th.
>
> Thanks again and I'll see you at work in the morning.
>
> Dennis

18. Jones forwarded the email to Tilton, and the two had a short conversation the same day to discuss what to do. During the conversation, Tilton instructed Jones to accept Pratte's resignation immediately, because she did not want Patriarch to employ a pilot who no longer wanted to work at the company. Nor did she want to entrust her safety to someone who clearly preferred to be working elsewhere.

19. Jones scheduled a meeting with Pratte the next day at Patriarch's offices in New York, and delivered the news that the company was accepting his resignation, effective immediately. Jones followed up with a written letter requesting that Pratte reimburse the company for the pilot training fees it had incurred.

20. Pratte has retained all the benefits of the G280 training (which he may use for his future endeavors), but has refused to reimburse Patriarch for any of the associated expenses, as he explicitly agreed.

**Pratte Tries to Shake Down Patriarch With a Bogus Retaliation Claim**

21. On January 29, 2018, Pratte (through counsel) sent Patriarch a letter threatening to sue Patriarch for unlawful retaliation under Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121, and under state law. Pratte alleged in the letter that he was fired for having reported to his superiors that Patriarch was violating various aviation regulations, and that he should be reinstated, paid huge sums of back pay, and even punitive damages.

22. These threatened claims are meritless and frivolous, for multiple, independent reasons, including the following.

23. First, a plaintiff bringing a retaliation claim must prove that he or she was subjected to an adverse employment action, such as being demoted or fired. Pratte voluntarily resigned. That Patriarch accepted his resignation immediately does not mean he was fired. After

all, Pratte offered Patriarch the option to accept his resignation at a sooner date of its choosing. In any case, once Pratte announced a desire to resign, he had no right to foist upon Patriarch a later resignation date of his own choosing.

24. Second, Patriarch's acceptance of Pratte's resignation had nothing to do with any alleged complaints about violations of the law. Neither Ms. Tilton (who made the decision to accept the resignation), nor Mr. Jones (the only person with whom she discussed the decision before it was made) had any knowledge of such allegations. The email announcing his resignation would not suggest that Pratte believed that there were any legal violations. To the contrary, it specifically said that Patriarch's approach to aviation was neither "wrong" nor "better than" his (unspecified) preferred approach.

25. Third, he could not possibly prove any damages, given that he had already announced his willingness to resign at any time.

**Pratte Violates the Confidentiality Agreements**

26. In the course of investigating Pratte's claims, Patriarch came to learn that he engaged in multiple breaches of his Confidentiality Agreements. Specifically, Patriarch discovered that Pratte routinely forward confidential, company emails to his personal email accounts, and, based on his own admissions in his threatening letter, was routinely recording conversations with Patriarch employees surreptitiously.

27. Those documents and recordings are company property that Pratte has no right to retain or disseminate.

**FIRST CAUSE OF ACTION — BREACH OF CONTRACT**
**(OFFER LETTER)**

28. Patriarch incorporates the foregoing allegations in full.

29. Under the Offer Letter, Pratte agreed to "promptly reimburse" Patriarch for certain training and other expenses if "he voluntarily resign[ed] [his] employment or [was] terminated for 'cause' (as determined by the Board in its sole discretion) within one (1) year after [his] start date."

30. Pratte voluntarily resigned within one year after his start date.

31. Alternatively, Pratte was terminated for cause, in the Board's "sole discretion." Patriarch's Board had the unfettered discretion to determine that Pratte was subject to immediate removal from his job, given that, following the company's investment in him, he had so quickly announced he wanted to leave.

32. As a further alternative, Pratte announced that he would resign no later than June 9, 2018. Even that date is less than one year from his start date (June 17, 2017), and so the reimbursement obligation would in all events be triggered.

33. Patriarch has been damaged insofar as Pratte has not paid the expenses due.

### SECOND CAUSE OF ACTION — BREACH OF CONTRACT
### (CONFIDENTIALITY AGREEMENTS)

34. Patriarch incorporates the foregoing allegations in full.

35. Pratte has breached the Confidentiality Agreement by, among other actions, sending himself and retaining, confidential company emails and recordings of confidential Patriarch communications.

36. Patriarch has been damaged by these breaches in an amount that will be determined at trial.

### THIRD CAUSE OF ACTION — DECLARATORY JUDGMENT (28 U.S.C. § 2201)

37. Patriarch incorporates the foregoing allegations in full.

38. Pratte has threated to sue Patriarch for retaliation under 49 U.S.C. § 42121 and under state law.

39. There is an actual controversy between the parties as to whether these allegations have merit.

40. In fact, they have no merit whatsoever, and it would benefit the parties and the administration of justice for the Court to issue a judgment declaring as much.

## **PRAYER FOR RELIEF**

WHEREFORE, Patriarch hereby demands:

1. injunctive relief directing Pratte to return all information belonging to Patriarch or otherwise covered by the Confidentiality Agreements;

2. damages in an amount to be determined at trial, plus all appropriate interest and costs;

3. a judicial declaration that Patriarch has not engaged in unlawful retaliation against the plaintiff; and

4. such other relief as the Court deems just and proper.

Dated: New York, New York
March 20, 2018

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: */s/ Charles Michael*
Charles Michael
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com

*Counsel for plaintiff*
*Patriarch Partners, LLC*